**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| JAMES HARTMAN, | : | Civil Action No. 15-4437 (ES) |
| | : | Civil Action No. 15-5060 (ES) |
| Debtor. | : | |
| ——————————————— | : | |
| | : | ON APPEALS FROM ORDERS OF |
| JAMES HARTMAN, | : | THE UNITED STATES BANKRUPTCY |
| | : | COURT FOR THE DISTRICT OF |
| Appellant, | : | NEW JERSEY [Case No. 15-11180 (JKS)] |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., D/B/A | : | OPINION |
| AMERICA'S SERVICING COMPANY, | : | |
| AS SERVICER FOR U.S. BANK, N.A., | : | |
| AS TRUSTEE FOR RESIDENTIAL | : | |
| ASSET SECURITIES CORP., HOME | : | |
| EQUITY MORTGAGE ASSET- | : | |
| BACKED PASS-THROUGH | : | |
| CERTIFICATES SERIES 2005-EMX5, | : | |
| | : | |
| Appellee. | : | |

SALAS, DISTRICT JUDGE

## I. Introduction

James Hartman ("Hartman," "Debtor," or "Appellant") appeals two orders of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Wells Fargo Bank, N.A., d/b/a America's Servicing Company, as servicer for U.S. Bank, N.A., as trustee for Residential Asset Securities Corp., Home Equity Mortgage Asset-Backed Pass-Through Certificates Series 2005-EMX5 ("Wells Fargo," "Creditor," or "Appellee") opposes both appeals.

Briefly, the first Bankruptcy Court order (the "June 15 Order") required Hartman to tender adequate protection payments to Wells Fargo. The second Bankruptcy Court order (the "June 26 Order") vacated an automatic stay that was triggered by Hartman's bankruptcy petition.

Section 361 of the Bankruptcy Code requires "adequate protection" to a creditor under certain circumstances. Here, after holding two hearings and receiving briefing on the issue, the Bankruptcy Court determined that—while Hartman pursued an adversary proceeding—he must tender adequate protection to Wells Fargo. It ruled that such adequate protection would involve payment of post-petition mortgage payments by a certain date and, thereafter, monthly post-petition mortgage payments. But, because Hartman failed to make the ordered payment by that date, the Bankruptcy Court granted Wells Fargo's motion to lift the automatic stay.

This Court must determine whether the Bankruptcy Court abused its discretion. For the reasons below, the Court finds that the Bankruptcy Court did not abuse its discretion and AFFIRMS both the June 15 Order and the June 26 Order.

## II. Background

### A. Relevant Factual & Procedural History

Hartman and his wife Amanda Johns (collectively "the Mortgagors") live at 38 Rose Terrace, Chatham, New Jersey (the "Property"). On September 21, 2005, the Mortgagors executed a promissory note for $697,000.00 in exchange for a mortgage loan. The note was secured by the Property, and Wells Fargo holds the mortgage. After the Mortgagors purportedly defaulted on the loan, on October 5, 2008, Wells Fargo accelerated the mortgage loan. On or about November 25, 2008, Wells Fargo filed a mortgage foreclosure complaint in New Jersey state court.

On December 16, 2008, the Mortgagors filed for Chapter 13 bankruptcy in the Bankruptcy Court ("First Bankruptcy Action").[1]  Ultimately, under an approved Chapter 13 plan, the Mortgagors seem to have met their payment obligations and surrendered the Property—but Wells Fargo still needed to foreclose on the Property to take actual possession of it.  (*See, e.g.*, D.E. No. 12-2 at 4:17-20 (Hartman's counsel explaining that the Mortgagors had "already discharged [their] liability" in the First Bankruptcy Action and that Wells Fargo was "looking to go after the [P]roperty")).[2]  On March 3, 2014, the Bankruptcy Court granted a discharge and the First Bankruptcy Action was closed.  (*See* Bankr. D.N.J. No. 08-34985, D.E. No. 152).

On October 11, 2013, the New Jersey state court dismissed Wells Fargo's foreclosure action for lack of prosecution.  On or about July 17, 2014, Wells Fargo moved to reinstate its New Jersey state foreclosure action.  On or about August 14, 2014, the New Jersey state court granted Wells Fargo's motion, but required that Wells Fargo move for entry of final judgment of foreclosure by December 12, 2014—or else the matter would remain dismissed and Wells Fargo would be required to file a new foreclosure action.  Wells Fargo did not move for entry of final judgment before December 12, 2014.

Then, on January 22, 2015, Hartman individually filed for Chapter 13 bankruptcy in the Bankruptcy Court ("Second Bankruptcy Action").[3]  On February 5, 2015, Hartman filed a Chapter 13 plan of reorganization (the "February 5 Plan") in which, among other things, Hartman and his wife "challenge[d] the validity" of Wells Fargo's claim against the Property,

---

[1] *See In re Hartman*, Ch. 13 No. 08-34985-NLW (Bankr. D.N.J.).

[2] Unless otherwise noted, all citations to the record refer to docket entries in Civil Action No. 15-4437 (ES).  Indeed, as noted by Wells Fargo, (D.E. No. 12 at 1), Hartman's appeal briefs are nearly identical in Civil Action No. 15-4437 and Civil Action No. 15-5060.

[3] *See In re Hartman*, Ch. 13 No. 15-11180-JKS (Bankr. D.N.J.).

expressed that they would file an adversary proceeding[4] to challenge the validity of Wells Fargo's claim, and expressed that they will "pay post-petition taxes and insurance on the Property outside the Plan." (D.E. No. 6-1 at A010). The February 5 Plan also provided that the "current value of debtor's interest" in the Property was $770,413. (*Id.* at A019). But the February 5 Plan did not appear to explicitly delineate that certain payments would be for adequate protection. (*See id.* at A010).

On April 9, 2015, the Bankruptcy Court held a confirmation hearing on the proposed February 5 Plan. (*See* D.E. No. 12-2). Notably, at the hearing, Hartman argued that the post-petition taxes and insurance on the Property constituted adequate protection. (*Id.* at 12:21-24). But the parties could not agree on an adequate protection amount, and the Bankruptcy Court directed Hartman and Wells Fargo to try and resolve this issue before seeking a ruling. (*See id.* at 13:16-14:25; D.E. No. 12 ("Creditor / Appellee Brief") at 3).

Then, on June 2, 2015, Hartman requested that the Bankruptcy Court confirm his February 5 Plan and approve his proposed adequate protection payment amount of $3,545.18. (D.E. No. 6-1 at A066). Hartman arrived at this figure by taking 60% of the Wells Fargo's claimed principal and interest amount (i.e., $2,605.96) and adding 100% of escrow (i.e., $939.22). (*Id.* at A067-68).

But, on June 3, 2015, Wells Fargo opposed this request, arguing that adequate protection should be set at the contractual monthly mortgage payment of $5,282.49. (D.E. No. 12-4 at 5).

---

[4] "Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an 'adversary proceeding,' . . . ." *In re Mansaray-Ruffin*, 530 F.3d 230, 234 (3d Cir. 2008) (citation omitted). "An adversary proceeding is essentially a self-contained trial—still within the original bankruptcy case—in which a panoply of additional procedures apply." *Id.*; *see also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 204 n.11 (3d Cir. 1995) ("Disputes litigated in the bankruptcy court are divided into adversary proceedings and contested matters. Ten types of disputes are designated as adversary proceedings in Bankruptcy Rule 7001. . . . Adversary proceedings are governed by more formal rules of procedure than contested matters and must be instituted by the filing of a complaint.").

Wells Fargo noted—as it did in its earlier filed "proof of claim"—that Hartman owed: (1) $358,448.42 in pre-petition arrears; and (2) $992,387.40 in total secured debt (which incorporated the principal balance, interest, a late charge, escrow advances, property inspection fees, and certain appraisal fees). (D.E. No. 12-3 at 6; D.E. No. 12-4 at 3). Wells Fargo set forth that Hartman's pre-petition arrears involved 68 months of delinquent payments based seemingly on the period from June 2009 to January 2015—and 5 months of post-petition delinquency based on the period from February 2015 through June 2015. (*See* D.E. No. 12-3 at 6; D.E. No. 12-4 at 3).

Also on June 3, 2015, Hartman filed an adversary proceeding that challenged the validity of Wells Fargo's claim against the Property based on state statute-of-limitation grounds. (D.E. No. 6-1 at A074-075). And on June 4, 2015, Hartman filed a modified Chapter 13 plan of reorganization (the "Modified Plan") in which, among other things, Hartman and his wife "challenge[d] the validity" of Wells Fargo's claim against the Property" and expressed that they have filed an adversary complaint. (*Id.* at A097). The Modified Plan also incorporated Hartman's proposed adequate protection of $3,545.18—which was a change from the February 5 Plan. (*See id.* at A010, A097, A102).

Then, on June 5, 2015, Wells Fargo moved for relief from the automatic stay under Section 362(d) of the Bankruptcy Code. Wells Fargo did so on an expedited basis purportedly because the Bankruptcy Court judge's "last day on the bench was scheduled for June 12, 2015." (Creditor / Appellee Brief at 3). On June 10, 2015, Hartman opposed Wells Fargo's motion, certifying that certain purported post-petition adequate protection payments had been made. (D.E. No. 6-1, A107-08). And, on June 11, 2015, the Bankruptcy Court held a hearing on Wells Fargo's motion.

### B.  The Bankruptcy Court's Hearings & Subsequent Orders

Two hearings appear relevant for purposes of the instant appeals.  *First*, at the April 9 Chapter 13 plan confirmation hearing, the Bankruptcy Court clarified that Wells Fargo would want "to be paid adequate protection pending" the adversary proceeding—and Wells Fargo agreed.  (D.E. No. 12-2 at 10:5-11).  Further, the Bankruptcy Court set forth that, although it was "skeptical" of Hartman's statute-of-limitations position, Hartman was "entitled to a fair hearing" and he should have a "chance to file [his] adversary proceeding"—but "that adequate protection ought to be paid."  (*Id.* at 10:17-21).  But, as to the amount of adequate protection, the Bankruptcy Court directed the parties to resolve the matter themselves or litigate it, but suggested "that it ought to be the amount of the mortgage payment."  (*Id.* at 12:8-12, 13:16-19).  The parties then submitted the June 2 and June 3 briefing referenced above to the Bankruptcy Court concerning the amount of adequate protection.

*Second*, at the June 11 motion hearing, Hartman argued that "adequate protection has been paid since the start of this case" and that "[a]dequate protection does not mean a mortgage payment, it's defined by [§ 361 of the Bankruptcy Code]."  (D.E. No. 12-5 at 14:14-17).  Notably, Hartman argued that "[w]hether it's sufficient or not is the question that we have to look at today."  (*Id.* at 14:17-18).  So Hartman argued that, as of June 11, 2015, there had been "no resolution [as] to the amount of adequate protection" and the "sufficiency of the adequate protection" was at issue.  (*Id.* at 16:18-19, 17:2-6).  In other words, under Hartman's view, the parties were asking the Bankruptcy Court "to rule on . . . how much is adequate."  (*Id.* at 17:13-15; *see also id.* at 24:22-23 (stating that "we're looking for Your Honor's direction on how much we should pay" for adequate protection)).

The Bankruptcy Court addressed this issue as follows:

What's the cost to be imposed on the debtor to get the opportunity to litigate with [Wells Fargo] in the adversary proceeding. And from my viewpoint, I think [the debtor] owe[s] [Wells Fargo] the full amount of the mortgage payment. . . . It's 68 months of non payment [pre-petition].

. . . .

And now we've gone over 72, I mean that would be six years. Right? Six years of non payment just to put in perspective. So the debtor is looking for the home run of all home runs, for a residential mortgage holder. If you're going to get to this fight in the adversary proceeding, I think you've got to pay them the full amount of the mortgage payment while you've had the luxury of the automatic stay in this case.

. . . .

[Hartman's Counsel]: So it's the amount, it's the full amount of --

The Court: Yes, sir.

[Hartman's Counsel]: -- contractual amount from February through June.

The Court: And here's my reason for that. Aside from the history here, debtor came in Chapter 13 knowing it wasn't going to be a freebie. The debtor has his best case scenario. . . . So for the debtor to be here today, hoping that I'm merely going to require them to pay interest -- I mean, insurance and taxes, is frankly I think not a good sign that they can make the payments going forward because that's a significant gap. And they had to have thought or should have thought that they were going to have to cover that difference.

So I'm a little concerned about that and that's why I want you to go talk to your client today. Because if they can't carry -- in essence, if they can't carry the cost of being in Chapter 13, while you litigate this issue [Wells Fargo's Counsel], and I honestly think this is largely a motion issue. Right? I mean, it's a legal issue. . . .

. . . .

> There's not big factual issues here. So you can resolve that
> adversary proceeding in a relatively short period of time. . . . But
> there's no free lunch even in Chapter 13. Maybe if you win, you'll
> get a free lunch. But not right now.

(D.E. No. 12-5 at 27:22-28:12, 30:1-31:4).  So, at the June 11 hearing, the Bankruptcy Court

ruled that the "stay will stay in place subject to the payment of the adequate protection until at

least the conclusion of the adversary proceeding."  (*Id.* at 36:6-8).

And, on June 15, 2015, the Bankruptcy Court issued an Order that, in relevant part, set

forth that: (1) the Bankruptcy Court "has determined that[,] since the Debtor is pursuing an

Adversary Complaint against [Creditor,] that the Debtor must tender adequate protection

payments to [Creditor] in order for the automatic stay to remain in effect against [Creditor]"; (2)

"the Debtor is due and owing the post-petition mortgage payments for February 1, 2015 - June 1,

2015 in the amount of $5,282.49 per/month for a total delinquency of $26,412.45"; (3) "the

debtor must cure the post-petition arrears (minus any credit for taxes paid by the debtor directly

to the taxing authority and accepted before [Wells Fargo's] payment) . . . on or before June 22,

2015 at 5:00 pm"; (4) "[i]f the funds are not received by [Wells Fargo's] counsel on or before

5:00 PM June 22, 2015 then counsel for [Wells Fargo] may certify default and the Court shall

grant immediate Relief from the Automatic Stay"; and (5) "if the post-petition arrears are cured

by June 22, 2015 then the debtor must continue to tender adequate protection payments of

$5,282.49 on or before the 1st of each month while the Adversary Complaint is pending."  (D.E.

No. 6-1 at A117-19).

But, as the parties do not appear to dispute, Hartman did not tender the post-petition

arrears (in the amount of $26,412.45) by June 22, 2015.  So, on June 23, 2015, Wells Fargo filed

a certification of default.  (*See* Bankr. D.N.J. No. 15-11180, D.E. No. 50).  And on June 26,

2015, the Bankruptcy Court issued an order vacating the automatic stay as to the Property under § 362(d) of the Bankruptcy Code.  (D.E. No. 6-1 at A121-23).

## III.  The Parties' Arguments

### A.  The Debtor / Appellant

Hartman avers that there are three issues on appeal.  *First*, Hartman challenges whether the Bankruptcy Court erred "when it conditioned the continuation of the automatic stay . . . under 11 U.S.C. § 362(d)(1)" on his payment of "adequate protection to Wells Fargo, under 11 U.S.C. § 361, in amounts equal to Wells Fargo's full contractual pre-petition monthly mortgage payment where the Appellant had been paying post-petition taxes and insurance on the real property."  (D.E. No. 6 ("Debtor / Appellant Br.") at 2-3).  *Second*, Hartman challenges whether the Bankruptcy Court erred by determining that his "pursuit of an adversary proceeding against Wells Fargo was cause, under 11 U.S.C. § 361 and 11 U.S.C. § 362(d)(1), to condition to [sic] automatic stay upon the Appellant's payment of adequate protection payments in the amount of Wells Fargo's full contractual pre-petition monthly mortgage payment."  (*Id.* at 3).  *Third*, Hartman challenges whether the Bankruptcy Court erred in directing him "to pay adequate protection to Wells Fargo under 11 U.S.C. § 361 where Wells Fargo's right to foreclose" on the Property "had already expired under the under the [sic] six (6) year statute of limitations set forth under N.J.S.A. § 2A:50-56.1."  (*Id.*).[5]

---

[5] This Opinion resolves Hartman's appeals from the Bankruptcy Court's June 15 and June 26 Orders.  Hartman's statute-of-limitations contention under N.J.S.A. § 2A:50-56.1—which was the subject of his Adversary Proceeding—is a separate appeal pending before this Court, (*see* Civil Action No. 15-7093 (ES)), and will accordingly be separately resolved by the Court.

Further, the Court notes that—although Hartman raises these 3 issues in each appeal brief—he set forth 42 purported issues in Civil Action No. 15-4437 (ES), (D.E. No. 5 ("Statement of issues to be presented on appeal")), and 46 purported issues in Civil Action No. 15-5060 (ES), (D.E. No. 4 ("Statement of issues to be presented on appeal")).  As such, the Court addresses the issues raised—and argued—in Hartman's appeal briefs.  *See* Fed. R. Bankr. P. 8014(a)(5) ("The appellant's brief must contain . . . a statement of the issues presented . . . ."); *Cf. In re McLaughlin*, No. 06-1630, 2006 WL 3796421, at *3 n.3 (D.N.J. Dec. 20, 2006) ("As noted by Appellee, while the Trustee raises these evidentiary issues in his statement of 'Issues Presented on Appeal', the Trustee presents absolutely no

Accordingly, Hartman seems to argue that the Bankruptcy Court erred because it failed to establish—under § 361 of the Bankruptcy Code—a basis for ordering him to pay "overly burdensome adequate protection to Wells Fargo." (*See id.* at 8).  Hartman contends that the only "cause" the Bankruptcy Court determined was that Hartman was pursuing an Adversary Proceeding—but that this is insufficient because the Bankruptcy Court "does not have unlimited discretion to fashion an adequate protection in the form of a 'tax' for the debtor who is 'pursuing an Adversary Complaint.'" (*See id.*).  So, Hartman "maintains that the Bankruptcy Court erred by holding that [his] pursuit of the Adversary Proceeding against Wells Fargo substitutes for acceptable 'cause' as defined under Section 361 of the Bankruptcy Code." (*Id.* at 10-11).  To be sure, Hartman insists that Wells Fargo's right to foreclose on the Property expired under New Jersey state law (which is the subject of his Adversary Proceeding)—and, in any event, Hartman tendered adequate protection "in the form of post-petition real estate tax payments." (*Id.* at 10, 12).

Hartman argues that, as a result, the Bankruptcy Court erred when it granted Wells Fargo relief from the automatic stay under § 362(d) of the Bankruptcy Code. (*Id.* at 11).  Further, Hartman contends that the Bankruptcy Court never "specifically set forth which subsection of Bankruptcy Code Section 362(d)" it relied on in granting Wells Fargo such relief. (*Id.*).

### B.  Creditor / Appellee

Wells Fargo contends that this Court "should defer to the Bankruptcy Court's determination" that Hartman was required to "tender a lump sum payment of $26,412.45 (representing post-petition arrearage) and tender on-going mortgage payments of $5,282.49

---

argument on these issues in either his Appellate Brief or his Reply Brief submitted to this Court. As such, the Court will deem these arguments waived."); *In re Mazzocone*, No. 94-5068, 1995 WL 113110, at *3 (E.D. Pa. Mar. 16, 1995) (stating that "when a party fails to properly brief an issue on appeal, that party is considered to have waived that issue" and, in this case, the appellant listed four issues in her *brief*, but "the only issue for which [appellant] has provided any legal argument or authority is the effect of the pending appeals on the jurisdiction of the bankruptcy court" and therefore she "waived the other issues she sought to raise on appeal").

while the bankruptcy was active." (Creditor / Appellee Br. at 5). Wells Fargo states that, at the time Hartman filed the Second Bankruptcy Action, "he was due and owing for sixty-eight (68) mortgage payments, totaling $358,448.52 in pre-petition arrears and a total debt of $992,387.40." (*Id.* at 6). Wells Fargo also states that one of Hartman's own submissions "indicated that the fair market value" of the Property "diminished to $770,413.00—which created a substantial lack of adequate protection" for Wells Fargo. (*Id.*). And Wells Fargo argues that "[t]here is no doubt that these were all factors in the Bankruptcy Court's determination." (*Id.*).

In particular, Wells Fargo directs this Court to the two hearings that the Bankruptcy Court held: (1) the April 9, 2015 hearing during which Wells Fargo argues that the Bankruptcy Court determined that "adequate protection was necessary and required," but "allowed the parties to either reach a resolution or litigate the issue at a later time," (*id.* at 6-7); and (2) the June 11, 2015 hearing during which Hartman argued that "he should only be required to tender adequate protection payments consisting of taxes and insurance while the Adversary case was pending"—but that the Bankruptcy Court set forth its reasons for disagreeing with Hartman, (*id.* at 7-9).

So, Wells Fargo argues that the Bankruptcy Court "carefully reviewed the facts unique to this case and determined that the proper way to adequately protect [Wells Fargo], while allowing [Hartman] the opportunity to litigate its Adversary Proceeding, would be in the form of full post-petition payment as required under terms of the security instrument and mortgage." (*Id.* at 9).

To be sure, Wells Fargo maintains that the Bankruptcy Court properly granted relief from the automatic stay because "what constitutes 'cause' under 11 U.S.C. § 362(d)(1) is generally contingent upon the failure of a petitioner to provide" adequate protection—which "may take on various forms." (*Id.* at 10). Indeed, Wells Fargo highlights that the Bankruptcy Court gave

Hartman ten days after the June 11 hearing "to obtain the funds necessary to cure" after Hartman's counsel "advised the Bankruptcy Court that [Hartman] had the funds and was going to tender." (*Id.* at 10-11).

Finally, Wells Fargo declares that Hartman is wrong regarding its statute-of-limitations argument that is the subject of the Adversary Proceeding. (*Id.* at 12). Nevertheless, Wells Fargo contends that the Bankruptcy Court—while noting that "it was 'skeptical' of [Hartman's] argument under N.J.S.A. §2A:50-56.1(a)"—would nevertheless give Hartman "the use of the automatic stay—so long as he made his mortgage payments." (*Id.*).

## IV. Applicable Legal Principles

### A. Jurisdiction & Standard of Review

A federal district court has jurisdiction over appeals "from final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court's "order lifting the automatic stay" is appealable to a district court under § 158(a). *In re Connors*, 497 F.3d 314, 318 (3d Cir. 2007). Likewise, a bankruptcy court's order concerning adequate protection is reviewable by a district court. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564-65 (3d Cir. 1994).

"Whether to annul the automatic stay is a decision committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion." *In re Meyers*, 491 F.3d 120, 128 (3d Cir. 2007); *see also Rocco v. J.P. Morgan Chase Bank*, 255 F. App'x 638, 641 (3d Cir. 2007) ("[T]he Bankruptcy Court did not abuse its discretion in finding that there was cause for lifting the stay and that the [debtors] had not offered adequate protection."). "There is an abuse of discretion where the 'court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact . . . .'" *In re Marasek*, No. 14-5213,

2015 WL 1799743, at *2 (D.N.J. Apr. 16, 2015) (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999)).

So, the district court must "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re United Health Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (citation and quotation marks omitted). If necessary, the court "must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citation and quotation marks omitted).

### B. Relief from the Automatic Stay

"The Bankruptcy Code states that a bankruptcy petition operates as a stay of all enforcement proceedings against the debtor." *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) (citing 11 U.S.C. § 362(a)). "The purpose of the automatic stay provision is to afford the debtor a 'breathing spell' by halting the collection process," and the stay "enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." *Id.* "The stay of § 362 is 'automatic' because it is triggered as against all entities upon the filing of a bankruptcy petition, irrespective of whether the parties to the proceedings stayed are aware that a petition has been filed." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

"Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." *Id.* In particular, § 362 of the Bankruptcy Code provides, in relevant part, that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate

- 13 -

protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

### C.  Adequate Protection

The "purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev.*, 16 F.3d at 564 (citation and quotation marks omitted).  "A debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection." *Id.*  Although not explicitly defined, § 361 of the Bankruptcy Code sets forth that adequate protection "may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest in such property." *Id.* (citing 11 U.S.C. § 361). "The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secured party." *Id.*

## V.  Discussion

The crux of Hartman's argument seems to be that the Bankruptcy Court "erred by holding that [Hartman's] pursuit of the Adversary Proceeding against Wells Fargo substitutes for acceptable 'cause' as defined under Section 361 of the Bankruptcy Code"—and, further, that the Bankruptcy Court failed to "specifically set forth which subsection of Bankruptcy Code 362(d) was relied upon . . . in granting Wells Fargo relief from the stay." (*See* Debtor / Appellant Br. at 10-11).  In opposition, Wells Fargo retorts that "[j]ust because the Bankruptcy Court did not agree with [Hartman's] offer of a lesser payment amount does not automatically create an abuse of discretion." (Creditor / Appellee Br. at 9).

"[A] determination of whether there is adequate protection is made on a case by case basis." *In re Swedeland Dev.*, 16 F.3d at 564.  Hartman concedes as much: "The Bankruptcy Code gives the Bankruptcy Court wide discretion to fashion adequate protection for secured

creditors on a case by case basis." (Debtor / Appellant Br. at 8).

To reiterate, before the June 11 hearing, the Bankruptcy Court received briefing concerning the amount of adequate protection needed. Hartman proposed adequate protection payments of $3,545.18. (D.E. No. 6-1 at A067-68). Hartman arrived at this figure by taking 60% of the Wells Fargo's claimed principal and interest amount (i.e., $2,605.96) and adding 100% of escrow (i.e., $939.22). (*Id.*). Hartman also cited the facts underlying the Adversary Proceeding—which he filed on June 3, 2015[6]—as supporting his proposed adequate protection. (*Id.* at A068).

Wells Fargo, however, noted the pre-petition arrears, post-petition arrears, and the escrow advances—resulting in a total arrearage of $358,448.52 and a total debt of $992,387.40. (D.E. No. 12-4 at 3). Further, Wells Fargo argued that the Property was "under water" because— although the total debt was $992,387.40—Hartman's submissions "indicate that the property has a fair market value of $770,413.00." (*Id.*). Wells Fargo also noted that it had "disbursed $4,185.54 for City Taxes." (*Id.*). Wells Fargo further questioned the ability of Hartman to pay even the reduced amount that he himself proposed (i.e., $3,545.18) and, in any event, argued that the Bankruptcy Court "should not provide [Hartman] with the courtesy of a reduced payment amount" given his "extreme delinquency . . . both pre-petition and now post-petition." (*Id.*).

This background—and more—was before the Bankruptcy Court on June 11, 2015 when it engaged in oral argument on the issue of adequate protection. In particular, the Bankruptcy Court considered the factual history and noted that Hartman has benefitted from *six years of non-payment*—a "home run of all home runs, for a residential mortgage holder." (*See* D.E. No. 12-5 at 27:21-28:8; *see also id.* at 30:6-16). The Bankruptcy Court appeared concerned that, since Hartman seemed to be "hoping" that only "insurance and taxes" would be required for adequate

---

[6] (*See* Bankr. D.N.J. No. 15-11180, D.E. No. 25).

protection, this was not a "good sign that [Hartman] can make the payments going forward." (*Id.* at 30:10-14).

So the Bankruptcy Court ruled that, if Hartman was going to pursue an adversary proceeding, then he would have to pay Wells Fargo "the full amount of the mortgage payment while [he has] had the luxury of the automatic stay." (*Id.* at 28:8-12). In fact, Hartman even represented that he *could* make such payments—including the $26,412.45 sum that reflects post-petition mortgage payments from February 1, 2015 to June 1, 2015. (*Id.* at 24:24-25:15, 28:13-20, 32:9-16, 34:11-15, 35:3-9, 37:1-10).

On appeal, however, Hartman seems to sidestep the particular history of this case and characterizes the Bankruptcy Court's ruling as a "tax" for pursuing an adversary proceeding. (*See, e.g.*, Debtor / Appellant Br. at 8, 12). Indeed, he argues that the Bankruptcy Court erred because it "does not have unlimited discretion to fashion an adequate protection in the form of a 'tax' for the debtor who is 'pursuing an Adversary Complaint' to void that creditor's lien in an individual Chapter 13 reorganization." (*Id.* at 12 (citing the Bankruptcy Court's June 15 Order)).

It is axiomatic that the Bankruptcy Court does not have "unlimited discretion," as Hartman contends. But Hartman's position ignores the Bankruptcy Court's reasons for issuing its June 15 Order—in particular, those set forth on the record during the June 11 hearing. So, he seems to look at the Bankruptcy's Court's June 15 Order in a vacuum. After all, Hartman himself proposed adequate protection payments, but in different amounts than Wells Fargo proposed. Indeed, nowhere in Hartman's appeal memorandum does he explain *how* the Bankruptcy Court abused its discretion given the history of this case; he only re-frames the issue as whether the Bankruptcy Court has "unlimited discretion" to require a "tax" for pursuing an Adversary Proceeding. (*See, e.g.*, Debtor / Appellant Br. at 8, 12). So, on appeal, Hartman

ignores the very history that the Bankruptcy Court considered and asserts a position based on this incomplete history. This Court cannot conclude that the Bankruptcy Court abused its discretion under these circumstances.

To be sure, Hartman labels the amount of the adequate protection required by the Bankruptcy Court as "overly burdensome." (Debtor / Appellant Br. at 8). But the Court is not persuaded that the Bankruptcy Court abused its discretion in fashioning the amount it did. Hartman makes no effort to argue that the Bankruptcy Court had no basis for the reaching the amount it did, nor can he. *See In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) ("[O]n appeal, findings of fact by the bankruptcy court are set aside if clearly erroneous. A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citation and quotation marks omitted)). Further, Hartman fails to explain *how* the adequate protection amount is "overly burdensome." Rather, as noted above, Hartman had represented to the Bankruptcy Court that he *could* make these very adequate protection payments. The Court agrees with Wells Fargo that—just because the Bankruptcy Court did not agree with Hartman's proposed adequate protection payment amount—does not create an abuse of discretion.

Finally, the Court is not persuaded that the Bankruptcy Court abused its discretion in granting Wells Fargo relief from the automatic stay under § 362(d) of the Bankruptcy Code. As noted, § 362(d) provides the Bankruptcy Court with bases for lifting the automatic stay. *See* 11 U.S.C. § 362(d)(1). In particular, "[t]he Bankruptcy Code provides that the bankruptcy court shall grant relief from the automatic stay 'for cause'"—but "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

Here, the Court finds no abuse of discretion concerning the Bankruptcy Court's June 26 Order to lift the automatic stay. As discussed above, the Bankruptcy Court properly exercised its discretion and issued its June 15 Order that required, among other things, Hartman to tender post-petition arrears by June 22, 2015. Hartman failed to do so—despite being on notice that Wells Fargo's motion to lift the stay was held in abeyance as long as Hartman made the adequate protection payments. (*See* D.E. No. 12-5 at 36:6-13, 37:1-16). So, because the Bankruptcy Court had determined that such adequate protection was required, it lifted the stay as to the Property because no adequate protection payment was made by June 22, 2015.

To be sure, as noted above, Hartman argues that neither the June 15 nor the June 26 Order "specifically set[s] forth which subsection of Bankruptcy Code 362(d) was relied upon by the Bankruptcy Court in granting Wells Fargo relief from the stay." (*See* Debtor / Appellant Br. at 11). He cites no law in connection with his apparent contention that the Bankruptcy Court was required to specify the subsection. And the Bankruptcy Court's June 26 Order references Section 362(d) of the Bankruptcy Code and states "for cause shown." (*See* D.E. No. 6-1 at A122); *Cf.* 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . *for cause*, including the lack of adequate protection of an interest in property of such party in interest." (emphasis added)).

In any event, the Court finds that the Bankruptcy Court's reasoning during the April 9 and June 11 hearings—coupled with the aforementioned orders—shows that the lack of adequate protection payment in light of the totality of the circumstances supported lifting the stay under § 362(d)(1). Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in lifting the automatic stay.

**VI.  Conclusion**

For these reasons, the Court finds that the Bankruptcy Court did not abuse its discretion and affirms the June 15, 2015 Order and June 26, 2015 Order.   An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**